**MINPECO, S.A., Plaintiff,**

**v.**

**CONTICOMMODITY SERVICES, INC., ContiCapital Management, Inc., ContiCapital Limited, Norton Waltuch, Nelson Bunker Hunt, Lamar Hunt, William Herbert Hunt, International Metals Investment Co., Ltd., Sheik Mohammed Aboud Al-Amoudi, Sheik Ali Bin Mussalem, Naji Robert Nahas, Gilian Financial, Acli International Commodity Services, Inc., Banque Populaire Suisse, Advicorp Advisory and Financial Corporation, S.A., Mahmoud Fustok, Faisal Bin Abdullah, Merrill, Lynch, Pierce, Fenner & Smith, Inc., Bache Halsey Stuart Shields, Inc., E.F. Hutton & Company, Inc., Commodity Exchange, Inc., and The Board of Trade of the City of Chicago, Defendants.**

No. 81 Civ. 7619(MEL).

United States District Court, S.D. New York.

Nov. 24, 1982.

See also, D.C., 552 F.Supp. 332.

Cole & Corette, P.C., Washington, D.C., for plaintiff; Theodore Sonde, John E. Corette, III, D. McCarty Thornton, Deborah M. House, Susan Bierman, Washington, D.C., Grand & Ostrow, New York City, Paul R. Grand, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for defendant E.F. Hutton & Co., Inc.; Thomas Curnin, Thomas J. Kavaler, Alan B. Loughnan, Ruth D. MacNaughton, Edward R. Wiest, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Conti-Commodity Services, Inc., ContiCapital Management, Inc., ContiCapital, Ltd. and Norton Waltuch; Richard Rosen, Mark H. Alcott, Diane Englander, Peter W. Schneider, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendant Bache Halsey Stuart Shields, Inc.; Richard H. Klapper, Marvin Schwartz, Nadine Strossen, New York City, of counsel.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for defendant Mahmoud Fustok; Eliot Lauer, Herbert Stoller, Lorraine C. Parker, New York City, of counsel.

Arnold & Porter, Washington, D.C., for defendant Banque Populaire Suisse; Alex Bennett, Washington, D.C., of counsel.

Townley & Updike, New York City, Kirkland & Ellis, Chicago, Ill., for defendant The Chicago Bd. of Trade; James K. Leader, James E. Tyrell, Holly S. Stein, New York City, and John Stassen, John E. Angle, Frederick L. White, Scott E. Early, T. Webster Brenner, Chicago, Ill., of counsel.

Rogers & Wells, New York City, for defendants Merrill Lynch, Pierce, Fenner & Smith, Inc., ACLI Intern. Commodity Services, Inc.; Guy C. Quinlan, William R. Glendon, Susan A. Garcia, New York City, of counsel.

Hughes, Hubbard & Reed, New York City, and Shank, Irwin, Contant, Williamson & Grevelle, Dallas, Tex., for defendants Nelson Bunker Hunt, William Herbert Hunt and Lamar Hunt; Powell Pierpoint, George A. Davidson, Susan L. Thorner, Margaret G. King, New York City, and Roger Goldburg, Dallas, Tex., of counsel.

Baer, Marks & Upham, New York City, for defendant Commodity Exchange, Inc.; Barry Mandel, Mark A. Buckstein, Stephen F. Selig, Eugene R. Scheiman, Thomas E. Albright, William A. Brandt, Jr., Joshua B. Parker, New York City, of counsel.

Perito, Duerk, Carlson & Pinco, P.C., Washington, D.C., for defendant Intern. Metals Inv. Co., Ltd.; Paul L. Perito, John P. Wintrol, Washington, D.C., of counsel.

LASKER, District Judge.

Merrill Lynch, Pierce, Fenner & Smith, Inc., ("M/L"), E.F. Hutton & Company, Inc., ("Hutton") and ACLI International Commodity Services, Inc. ("ACLI") ("the brokers") move pursuant to Fed.R.Civ.Pr. 12(b)(6) to dismiss Claims One through Five (the antitrust claims), Claim Six (Section 9(b) of the Commodity Exchange Act, 7 U.S.C. § 13(b)) and Claims Ten and Eleven [1] (common law breach of fiduciary duty), and pursuant to Fed.R.Civ.Pr. 12(f), to strike the demand for punitive damages.

---

1. Claim Ten is as to Hutton and Claim Eleven is as to M/L. No claim as to breach of fiduciary duty is made as to ACLI, nor are punitive damages demanded as to ACLI.

Commodity Exchange, Inc. and the Board of Trade of the City of Chicago ("the exchanges") also move pursuant to Fed.R. Civ.Pr. 12(b)(6) to dismiss the antitrust claims.

As to the brokers, the complaint alleges that they were "participating in the transactions and activities [of] the Hunts [and other defendants] with the intent and effect of raising the price of silver." (Complaint ¶¶ 87, 93). The brokers contend that the only specific acts which they are alleged to have performed in connection with the conspiracy are lending money to the other defendants and providing them with trading assistance. Provision of ordinary financial services, they assert, does not constitute participation in a conspiracy. The brokers also contend that Minpeco's allegations as to market definition are too vague to permit a responsive pleading.

■ While the mere act of lending money to a conspirator does not cause one to be a co-conspirator, one who finances a conspiracy with the *intent* of participating in and aiding the conspiracy may be liable. Intent to further the conspiracy is alleged. (Complaint ¶¶ 84, 93).[2]

■ Defendants' primary contention is that Minpeco has failed to set forth *facts* sufficient to support its allegations of intent. (Memorandum of Hutton in Support of Motion to Dismiss at 51). In support of the proposition that Minpeco must set forth a threshold factual showing for its allegations, reliance is placed on such cases as *Morgan v. Prudential Group, Inc.,* 81 F.R.D. 418 (S.D.N.Y.1978) and *Troyer v. Karcagi,* 476 F.Supp. 1142 (S.D.N.Y.1976), in which

the question addressed was whether the complaint satisfied the requirements of Rule 9(b).[3]

■ The standard for determining the sufficiency of the complaint is set forth by Fed.R.Civ.Pr. 8, which provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Defendants' argument that more than "notice pleading" should be required for antitrust complaints has been firmly rejected in this Circuit. In *Nagler v. Admiral Corp.,* 248 F.2d 319 (2d Cir.1957), the court, by Judge Charles Clark, a central draftsman of the Federal Rules of Civil Procedure, observed that:

> "[I]t is quite clear that the federal rules contain no special exceptions for antitrust cases. When the rules were adopted there was considerable pressure for separate provisions in patent, copyright, and other allegedly special types of litigation. Such arguments did not prevail; instead there was adopted a uniform system for all cases ... 'To impose peculiarly stiff requirements in treble damage suits will be to frustrate the Congressional intent.'"

*Id.* at 323, *quoting Package Closure Corp. v. Sealright Co.,* 141 F.2d 972, 978 (2d Cir. 1944).

The brokers' attack on the sufficiency of the monopolization claims is also founded on the alleged lack of specificity. For example, Hutton criticizes the complaint because

> "Minpeco makes no effort to define specifically the boundaries of its purported market or markets.... Minpeco does not state whether 'silver' includes refined

---

**2.** ACLI contends that, along with the other members of the group designated by Minpeco as the "Contis," ACLI is alleged to have traded in silver futures contracts and acquired physical silver in large amounts. In support of its motion to dismiss, ACLI asserts that "the record is clear that [ACLI] neither traded silver futures contracts for its own account nor itself acquired physical silver." (ACLI's Memorandum of Law in Support of Motion to Dismiss at 7 n. *). The Court can hardly be expected to accept the statement of ACLI's counsel, set forth in a memorandum of law, that "the rec-

ord is clear" that ACLI did not engage in the conduct with which it has been charged. If the record is in fact so clear, it should be no great burden to establish the relevant facts in the appropriate manner in accordance with Rule 56. On a motion to dismiss, however, Rule 12(b)(6) requires that the plaintiff's allegations be deemed correct.

**3.** At argument, counsel for Hutton conceded that "9(b) on its face does not apply to antitrust claims." (Transcript of Oral Argument of October 8, 1982 at 38).

and unrefined silver, or whether it in addition includes unmined reserves."

(Memorandum of Hutton in Support of Motion to Dismiss at 58).

■ Rule 8 does not require that a plaintiff "define specifically the boundaries of its purported market." Minpeco has specified the market to consist of "interstate or foreign trade and commerce in silver and silver futures contracts" (Complaint ¶ 101). Silver is defined as "a commodity within the meaning of Section 2 of the Commodity Exchange Act" (Complaint ¶ 32), and silver futures contracts are defined in terms of the markets in which they are traded (Complaint ¶¶ 3, 32). Questions of market definition can be narrowed and determined through the discovery process. However, as it stands, the market definition set forth in the complaint meets the requirements of Rule 8: it gives defendants notice of the claim against them.

The brokers' reliance on *Heart Disease Research Foundation v. General Motors Corp.,* 463 F.2d 98 (2d Cir.1972), is misplaced. The complaint in *Heart Disease Research* was described by the Court of Appeals as "sloppy," "scattershot" and "frivolously drawn." 463 F.2d at 100–101. None of those adjectives is applicable to the complaint here. Moreover, the *Heart* court did not rule that the facts alleged in support of the conspiracy claim were insufficient; it stated that "*no* facts [were] alleged." *Id.* (emphasis added).

Defendants' contention that they are unable to determine what they are charged with is difficult to accept. Regular newspaper readers know what this case is about. Moreover, the complaint sets forth the gist of the charge in a plain, simple and adequate manner. More detailed pleading

"is surely not required and is on the whole undesirable. It is a matter for the discovery process, not for allegations of detail in the complaint. The complaint should not be burdened with possibly hundreds of specific instances; and if it were, it would be comparatively meaningless at trial where the parties could ad-

duce further pertinent evidence if discovered."

*Nagler, supra,* 248 F.2d at 326.

■ Nevertheless, while the complaint meets the requirements of Fed.R.Civ.Pr. 8 in setting forth "a short and plain statement of the claim showing that the pleader is entitled to relief," there is merit to the brokers' concern that they not be required to defend themselves if there is no basis for the complaint against them. The proper method for dealing with such concerns is to isolate the threshold issues and to pursue a discovery schedule directed towards developing those issues first for appropriate disposition thereafter.

■ The defendants' contentions concerning the claims for breach of fiduciary duty (Claims Ten and Eleven) are essentially the same as their arguments as to the charges of fraud. Whether the brokers owed a fiduciary duty to Minpeco depends on the facts of their relationship. The brokers assert that they were mere "orders takers" for Minpeco; Minpeco insists that the relationship was far more substantial, giving rise to correspondingly greater obligations of trust and confidence. The matter must be decided by taking the allegations to be true. On that basis, a claim is stated.

■ Similarly, it cannot be determined on the present record whether the brokers' conduct involved "high moral turpitude," *Walker v. Sheldon,* 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488, 491, 179 N.E.2d 497 (1961) and, accordingly, the motion to strike the demand for punitive damages is denied without prejudice to renewal.

\* \* \*

■ The exchange defendants' motion to dismiss the antitrust claims is more substantial. As to them, the complaint *is* ambiguous: as discussed in more detail in connection with the motion to dismiss the fraud claims, it is unclear whether Minpeco means to charge that the exchanges' alleged failure to carry out their duties simply permitted the remaining defendants to proceed with their conspiracy, or whether

the exchanges are alleged to have neglected their duties *for the purpose of participating* in the conspiracy. Even if the exchanges had neglected their duties out of bad faith, that is, out of a desire to injure plaintiff, that alone would not make them participants in a conspiracy. Conspiracy requires agreement, and it is far from clear that the complaint alleges the exchanges to have conspired with anyone.

Accordingly, the motion of the exchange defendants to dismiss the antitrust claims is granted without prejudice to plaintiff's amending the complaint within thirty days to allege conspiratorial intent *if plaintiff can do so in good faith.*[4]

In view of the fact that the state antitrust act is "patterned after the Sherman Act [and] governed by the same standards developed under the federal antitrust acts," *Hsing Chow v. Union Central Life Ins. Co.,* 457 F.Supp. 1303, 1308 (E.D.N.Y.1978), the motions to dismiss the New York antitrust claims are denied as to the brokers and granted as to the exchanges for the same reasons discussed above with respect to the federal antitrust claims.

\* \* \*

The motions of M/L, Hutton, and ACLI to dismiss the antitrust claims, the claims under § 9(b) of the Commodity Exchange Act and the claims for breach of fiduciary duty are denied. The motion to strike the demand for punitive damages is denied. The motion of the exchanges to dismiss the antitrust claims is granted without prejudice to amendment of the pleadings in accordance with the ruling above.

It is so ordered.

---

4. The exchange defendants raise a number of additional grounds in support of their motion for dismissal of the antitrust claims. In particular, a major attack on the complaint is that the exchanges are immune from antitrust regulation under *Gordon v. New York Stock Exchange,* 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975). We realize the significance of the argument; however, we are deferring consideration of the point since we do not know whether Minpeco can, in good faith and in accordance with the requirements of Fed.R.Civ.Pr. 11, allege intentional acts of conspiracy.