Phillip D. ROBERTS, et al., Plaintiffs,

v.

Werner HEIM, et al., Defendants.

No. C 84–8069 TEH.

United States District Court,
N.D. California.

March 23, 1987.

David B. Gold, George Donaldson, Solomon B. Cera, San Francisco, Cal., Philips D. Roberts, Winokur, Maier & Zang, Woodford G. Rowland, San Rafael, Cal., for plaintiffs.

Ernest Y. Sevier, Loraine P. Eber, Severson, Werson, Berke & Melchior, San Francisco, Cal., for defendants Somers & Altenbach and Robert E. Altenbach.

Boake Christensen, Richard North Patterson, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendant Peat, Marwick, Mitchell & Co.

James Robertson, Patricia D. Douglass, Wilmer, Cutler & Pickering, Washington, D.C., for defendant Lewin and Associates, Inc.

Robert J. Glynn, Gary A. Cerio, Glynn & Harvey, San Francisco, Cal., for defendant Baskin & Steingut fka Baskin & Sears.

Karen L. Hawkins, Christina Johnson, Taggart & Hawkins, San Francisco, Cal., for defendant Neil Rogen.

James A. Cunningham, Boulder, Colo., in pro per.

Kurt C. Peterson, Mary C. Oppedahl, Crosby, Heafey, Roach & May, Oakland, Cal., for defendant T. Kenneth Pyles.

David B. Epstein, Charles Marshall, Margolis, McTernan, Scope & Epstein, Los Angeles, Cal., for defendants Todd M. Doscher, The Doscher Group, Inc., and CLD Group, Inc.

Dennis M. Bourquin, Los Altos, Cal., for defendant William R. Conklin.

Kenneth D. Robin, San Francisco, Cal., for specially appearing non-defendants/TRO Respondents Energy Reserve Resources, Ltd., T. Michael Carrington, Joseph Babich and Larry Melnick.

George B. Richardson, Holtzman, Wise & Shepard, Palo Alto, Cal., and R. Nicholas Gimbel, Holtzmann, Wise & Shepard, New York City, for defendants Lewin Energy Corp., Vello A. Kuuskraa, Technology Catalysts, Inc. and R.L. DiCicco.

Ernest M. Anderson, Eckhoff, Hoppe, Slick, Mitchell & Anderson, San Francisco, Cal., and Dan Biles, Gates & Clyde Chartered, Overland Park, Kan., for defendant C. Norris Taylor Jr.

Richard A. Ardoin, Bronson, Bronson & McKinnon, San Francisco, Cal., Michael H. Greenberg, Gary S. Mayerson, Graubard, Moskovitz, Dannett, Horowitz & Mollen, New York City, for defendant Richard B. Basile.

Robert L. Leberman, Cheryl G. Weisbard, Sideman & Bancroft, San Francisco, Cal., for defendants American Energy Resources, Inc., AER Investments, Inc., The Forsee Group, Ltd., Drake Oil Technology Partners, Vulcan Oil Technology Partners, Vanguard Oil Technology Partners, Derringer Oil Technology Partners 1981, Crown Oil Technology Partners, Dillon Oil Technology Partners, Derringer Oil Technology Partners 1982, Castaic Oil Technology Partners, Carlton Oil Technology Partners, Ltd., and Louis F. Coppage (partnership defendants).

A. James Roberson II, Michael Q. Eagan, Peter J. Busch, Howard, Rice, Nemovski, Canady, Robertson & Falk, San Francisco, Cal., for defendant Friedman and Shaftan, P.C.

Tristam B. Brown, James J. Corbelli, Lillick, McHose & Charles, San Francisco, Cal., for defendant Houston Harbaugh, P.C.

George J. Ziser, Andrew C. Wolin, Moore, Clifford, Wolfe, Larson & Trutner, Oakland, Cal., for defendants Schumacher

& Hickey and Frederick R. Schumacher, Ltd. a P.C.

Stephen C. Tausz, Richard A. Ardoin, Stephen D. Colwell, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendant Glenda Exploration and Development Co.

Darrell D. McCullough, Denver, Colo., in pro per.

Roger B. Pool, Mark D. Petersen, Farella, Braun & Martel, San Francisco, Cal., for defendant Fox & Co.

Richard Haas, Lasky, Haas, Cohler & Munter, San Francisco, Cal., for Robert E. Altenbach.

Gersten, Savage, Kaplowitz & Zukerman, Edward R. Curtin, New York City, for Richard Basile, and Manhatton Partnership.

Robert D. Radcliffe, Salt Lake City, Utah, for Werner Heim, et al.

David M. Greenberg, Professional Corp., San Francisco, Cal., for Texoil Intern., Inc.

E. Lawrence Brock, Salt Lake City, Utah, for Am. Energy Resources, Aer, Foresee Grp., Louis F. Coppage and Denver Partnerships.

## ORDER CONCERNING MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, FOR CLASS CERTIFICATION AND FOR SANCTIONS

THELTON E. HENDERSON, District Judge.

Plaintiffs in this action are six individuals who invested in four limited partnerships ostensibly organized to produce oil and gas through the use of new "enhanced oil recovery technology" ("EOR"). These named plaintiffs are attempting to proceed as class representatives for over 1000 persons who invested in these four partnerships and in 36 other similar partnerships offered between 1979 and 1983. In their Fourth Amended Complaint, plaintiffs advance claims under Sections 12, 15 and 17(a) of the Securities Act of 1933, Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, Rule 10b–5, Section 1965 of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and applicable California law. Plaintiffs have named over 100 defendants, including the partnerships, the general partners, the individuals and corporate entities alleged to be the moving forces behind the partnerships, and an array of accountants, attorneys and consultants who provided services to the partnerships. Plaintiffs allege these 40 partnerships represent a worldwide conspiracy to defraud investors out of hundreds of millions of dollars.

The crux of the scheme as alleged by plaintiffs is as follows. Plaintiffs claim that certain individuals, led by defendant Heim, originated the idea of forming these partnerships to sell the investing public on the concept of EOR technology. These individuals recruited the general partners and then arranged for the partnerships to purchase for exorbitant fees from their corporate alter egos the exclusive license to use this "new" technology. Plaintiffs allege this technology was unproven and basically without value, and that the licensors did not have the right to grant an exclusive license. Plaintiffs further allege the partnerships purchased mineral rights from other corporate alter egos of Heim and the others at prices between 700 and 10,000 times their real value. Plaintiffs also contend that the professional defendants were aware, or should have been aware, of the nature and scope of this scheme, and thus joined—at least tacitly—in the scheme to defraud.

On May 21, 1986, the court dismissed plaintiff's Third Amended Complaint with leave to amend to cure pleading deficiencies identified by the court. The court cautioned plaintiffs that those deficiencies remaining in the next amended complaint would be dismissed with prejudice. This matter now comes before the court on motions filed by defendants in response to the Fourth Amended Complaint and on plaintiffs' motion for class certification. The court heard oral argument on the former motions on August 11, 1986; argument on the class certification issue took place on October 20, 1986. On October 20, 1986 the court also took under submission defendant

Peat Marwick's motion to strike class allegations against it and for sanctions, and plaintiffs' cross-motion for sanctions. For the reasons stated below, these motions are granted in part and denied in part.

## I. MOTION FOR SUMMARY JUDGMENT

### A. *Promissory Note Payments As Securities Purchases*

Defendants have moved for partial summary judgment on the issue of whether the promissory note payments made by plaintiffs constituted separate purchases of securities. Defendants first raised this issue in response to the Third Amended Complaint. At that time, the court ruled that the record was not sufficiently developed to permit a finding on the question of plaintiffs' intent in making the promissory note payments. For the reasons stated below, the court finds the record now permits an informed ruling on this issue and hereby grants this motion.

While the precise details of each plaintiff's investment may vary, the basic facts are the same.[1] The investments in the Denver partnerships provide a typical example. When investing in the partnerships, each plaintiff made a commitment to provide $150,000 to the partnership. This commitment consisted of a $12,500 payment at the time of subscription, and the execution of promissory notes for the balance. Two of these notes were short-term with each partner agreeing to pay $12,500 in each of the first two years following the formation of the partnerships. The remaining promissory notes were of longer duration with each partner promising to provide $112,500 in three installments fourteen to sixteen years from subscription. In the first years of the partnerships, investors typically claimed tax deductions equal to four or five times each year's cash payment.

In bringing this lawsuit, plaintiffs have advanced claims against defendants who were not involved with the alleged scheme to defraud until after plaintiffs made their initial partnership contributions. These defendants generally became involved with the partnerships during the initial years of their existence. Plaintiffs contend that each payment on a promissory note constituted a separate investment decision and thus any defendant who participated in the transactions before any of the subsequent promissory note payments were made is liable for fraud in the sale of a security.

■ Defendants assert these promissory note payments did not constitute separate purchases. They contend any defendant not associated with the partnerships at the time of plaintiffs' initial investments therefore cannot be liable for fraud in the sale of a security.[2] The court agrees that the promissory note payments did not constitute separate security purchases.

■ A purchase of securities occurs when the buyer and seller are "committed" to the transaction; commitment occurs at "the point at which the parties obligated themselves to perform what they agreed to perform even if the formal performance of their agreement is to be after a lapse of time." *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 891 (2d Cir.1972). Plaintiffs made their commitment to defendants at the time of their initial cash contributions to the partnerships. At that time they also signed promissory notes, which are traditionally viewed as unconditional obligations to pay a sum certain, thereby fixing the maker's repayment obligation at the time they are executed. See, 3A A.L. Corbin, *Corbin on Contracts* ¶¶ 624–27 (1960); 10 W.H.E. Jaeger, *Williston on Contracts* § 1159 (3d ed. 1967).

The facts surrounding the execution of these notes demonstrate plaintiffs' obligations were fixed and they were liable for

---

**1.** The amount of the subscription cost of a unit in each partnership varied, as did the timing of the promissory note payments. However, plaintiffs have not identified any differences in the material facts relevant to this motion.

**2.** Plaintiffs have also alleged that certain defendants who aided the partnerships after the initial subscription period are liable under § 10(b) for conspiring to defraud plaintiffs. This theory of liability is discussed elsewhere in this Order.

the full extent of the promissory notes at the time the notes were signed. Plaintiffs admit they executed the promissory notes as part of the total purchase price for each partnership unit. Plaintiffs granted the partnerships significant rights to ensure full payment on this obligation. In the event of non-payment on any note, the partnerships were entitled to foreclose on plaintiff's partnership interests and immediately accelerate plaintiffs' obligation on all outstanding promissory notes. To ensure collection of all amounts due, the partnerships had full recourse to all of plaintiffs' personal assets. The subscription agreements signed by plaintiffs clearly described the extent of their personal obligation; for example, the Boulder Oil and Gas Associates 1980 ("Boulder '80") subscription agreement stated "I realize that the subscription price of each unit is $150,-000 which is with full recourse to all of my assets." In their declarations, plaintiffs have conceded that no one ever told them that the partnerships might relieve them of these obligations and that they knew they were legally obligated to make these payments.

Plaintiffs contend these facts do not conclusively prove that they were committed to making the promissory note payments. Plaintiffs advance several theories to demonstrate that they may have been able to avoid making the promissory note payments. They argue this power of avoidance makes each payment a separate investment decision. Plaintiffs further contend that the issue of whether a note payment is a purchase of a security is a question of intent for the trier of fact (*citing Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 812–13 (9th Cir.1981). Plaintiffs argue it would thus be inappropriate for the court to resolve this issue by summary judgment. Finally, they assert they have not had an opportunity to conduct full discovery and a ruling on this issue is therefore premature. The court will address each of these contentions.

The court recognizes that the Ninth Circuit has cautioned courts against ruling on questions of intent at the early stages of a case. *Stephenson*, 652 F.2d at 812–13. It

was for this reason that the court declined to rule on this issue when first raised in a motion to dismiss the Third Amended Complaint. However, it is not always inappropriate to rule on questions of intent without the benefit of trial. Where, as here, the facts before the court clearly demonstrate the parties' intent, summary judgment may be appropriate. *See, e.g., Hudson v. Capital Management Int'l., Inc.*, No. C 81 1739 MHP (N.D.Cal. March 7, 1984) (*"Hudson III"*) [Available on WESTLAW, DCT database].

The facts before the court are quite different from those before the court in *Stephenson*. First, *Stephenson* involved capital contribution calls, not payments on promissory notes. More important, in *Stephenson*, the trial court made an incorrect assumption about plaintiffs in that action which does not apply here. The *Stephenson* court assumed that plaintiffs were irrevocably committed to make the capital contributions and thus these contributions did not constitute separate investment decisions. In overturning the trial court's summary judgment ruling, the Ninth Circuit noted that plaintiffs had "limited liability" from any default and concluded that this limited liability raised the real possibility that plaintiffs would choose to default. *Id.* In contrast here, the partnerships had full recourse to all of plaintiffs' personal assets in the event of non-payment. Under these circumstances, the court finds the possibility of non-payment was extremely remote and that plaintiffs were fully committed to making the payments. *See Hudson III, supra.*

Moreover, plaintiffs indicated their intent to make these payments by the tax deductions claimed for the first year of their partnership investments. Plaintiffs concluded that all of the sums promised to the partnership were "at risk" at the time of subscription and deducted a share of partnership losses far in excess of their initial cash contributions. The alleged validity of these deductions was premised on plaintiffs' obligation to make *all* of their note payments, otherwise the plaintiffs would not be "at risk" for more than their cash contribution. As Judge Patel noted in

*Hudson III*, for plaintiffs now to argue that their note payments were not fixed would be to adopt a position inconsistent from that taken with the I.R.S. *Id.* at 14.[3]

Plaintiffs also assert the evidence suggests that the partnerships would not have enforced the non-payment provisions of the notes other than by confiscating a plaintiff's capital account or trying to find a new investor to assume the obligation. Plaintiffs suggest these limited responses provided them with a real opportunity to avoid making the note payments. However, this speculation presupposes plaintiffs' breach of their agreement, "the possibility of which does not give rise to an 'investment decision' constituting a purchase under the securities laws." *Id.* at 11–12. Moreover, finding someone to assume the obligation of a breaching investor "at most would [result] in an assignment of plaintiffs' payment obligations, not a termination of such obligations." *Hill v. Equitable Bank, Nat. Assn.*, 599 F.Supp. 1062, 1073 n. 11 (D.Del.1984).

Plaintiffs also suggest they might have dissolved the partnership before the promissory notes came due. Judge Patel rejected a similar argument as "patently spurious" in *Hudson*. This court reaches a similar conclusion here, as dissolution required the consent of 70% of the partners. The possibility of this unified action is too remote to provide the basis for converting a mandatory note payment into a discretionary decision.

Plaintiffs' final argument is that they have not had sufficient opportunity to conduct discovery on this issue and a summary judgment ruling is therefore premature. Unlike some of the other complex securities cases cited by plaintiffs in support of this argument, the key information in this matter is not in the exclusive control of defendants. All the evidence concerning plaintiffs' intent is within the possession of plaintiffs. *cf. Alabama Farm Bureau Mutual Casualty Co., Inc. v. American Fidelity Life Insurance Co.*, 606 F.2d 602 (5th Cir.1979). Plaintiffs have not introduced any evidence to suggest that at the time they executed the notes they thought they had a choice about whether or not to make the payments. In fact, all the evidence suggests they knew they were obligated to make the payments when the notes came due. Plaintiffs' arguments based on defendants' hypothetical intent have also been rejected; thus, additional discovery to prove the facts underlying these arguments would be unavailing.

Having considered the evidence and memoranda submitted by all parties, the court finds there are no genuine issues of material fact concerning plaintiffs' obligation to make their promissory note payments. The court finds plaintiffs committed themselves to making these payments at the time they signed the notes. Therefore, plaintiffs' subsequent payments did not constitute separate investment decisions under the securities laws.

## II. MOTIONS TO DISMISS

### A. *RICO Claim*

In the May 21 Order, the court dismissed plaintiffs' RICO claim with leave to amend to correct the pleading deficiencies. Having examined the Fourth Amended Complaint, and the memoranda submitted by the parties, the court finds plaintiffs have not adequately alleged a claim under RICO. For this reason, the court dismisses the RICO claim with prejudice.

In its prior order, the court directed plaintiffs to identify separately in any amended complaint the alleged RICO "enterprise" and the defendants who conduct-

---

**3.** Plaintiffs attempt to distinguish this case from *Hudson* by pointing out that the plaintiffs in *Hudson* deducted the full amount of *all* of the promissory notes in the first year and would have owed the government money had they not made the subsequent note payments. Here, plaintiffs deducted in the year of contribution only a *portion* of the money "at risk" from notes. Plaintiffs assert they would not have been liable for additional tax payments had they not made the promissory note payments. The court finds this to be a distinction without a difference. Moreover, even assuming plaintiffs' deductions were based on the long-term notes, this does not remove the inconsistency inherent in taking a tax deduction based on the definiteness of a long-term note and then arguing that identical short-term notes were discretionary.

ed their illegal activities through that enterprise. *See* Order at 17–18 (citing *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984) for the proposition that a defendant cannot simultaneously be the RICO defendant and the enterprise). In their Fourth Amended Complaint, plaintiffs have advanced two theories in an attempt to correct their pleadings. They assert first that a sub-group of defendants, the Petrotec Entities, constituted the enterprise. In the alternative, they argue that the enterprise was an association-in-fact made up of all the defendants.

■ An association may serve as the enterprise in a claim under RICO. However, the courts have held that, in this context, an association means a group of "individuals." *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Plaintiffs argue "individuals" may encompass a group of persons and business entities, but have cited no authority for this assertion. The court does not agree. When used in this context, the term "individuals" refers to individual living persons and not to an association or enterprise. *See e.g. United States v. Computer Sciences Corp.*, 511 F.Supp. 1125, 1131 (E.D. Va.1981).

■ Plaintiffs have also failed to cite any authority for the proposition that a sub-group of defendants can constitute the enterprise under RICO. In paragraph 136 of the complaint, plaintiffs assert the Petrotec Entities constituted the enterprise. In that same paragraph, they also identify four Petrotec companies engaged in the technology licensing business which were in existence prior to the formation of the alleged conspiracy. These allegations reveal the continued lack of coherence of plaintiffs' assertion. Plaintiffs fail to indicate whether they are claiming that all 26 Petrotec Entities constituted the enterprise, or if the enterprise was made up of just the four companies whose existence preceeded the alleged conspiracy. Moreover, these Petrotec Entities are the same companies identified elsewhere in the complaint as controlling the scheme to defraud plaintiffs. ¶ 107,115. This assertion that

the "enterprise" controlled the remaining defendants is the same type of inconsistent conflation of the enterprise and defendant concepts complained of in the May 21 Order. As plaintiffs have failed to correct this inconsistency, their RICO claim is dismissed with prejudice.

**B. *Section 17(a)***

■ In their Fourth Amended Complaint, plaintiffs raise for the first time a claim under Section 17(a) of the Securities Act of 1933. In accordance with most of the courts in this District, this court has not recognized the availability of a private right of action under § 17(a). Plaintiffs assert the language in a recent Ninth Circuit decision, *Mosher v. Kane*, 784 F.2d 1385, 1390 n. 9 (1986), compels the recognition of a private right of action. Having reviewed this case, and the Northern District of California cases decided since *Mosher, see e.g. Gordon v. Tyndall*, No. C 86 1397 (WHO) [Available on WESTLAW, DCT database], *Lindemuth Co. v. Shannon Financial Corp*, 637 F.Supp. 991, the court is still persuaded no private right of action exists under Section 17(a). For this reason, plaintiffs' claim under this section is dismissed.

**C. *Claims Under Sections 12 of the 1933 Act***

Plaintiffs have advanced claims against a variety of defendants under Section 12 of the 1933 Act. Section 12 imposes liability on any person who sells a security in violation of the Act's registration provisions (§ 12(1)) or who uses a misleading prospectus or oral statement in the sale of a security (§ 12(2)). Defendants assert these claims are infirm both for failing to properly allege seller status and for not being brought within the applicable statute of limitations.

**1. Statute of Limitations**

■ In light of this court's ruling that the promissory note payments did not constitute sales of securities, three of the four named plaintiffs have failed to advance timely claims under this section. Section

13 of the Act provides that no action can be brought under § 12(1) more than three years after the security was offered to the public or under § 12(2) more than three years after the sale of the security. 15 U.S.C. § 77m. Plaintiff Bell bought his partnership unit in Boulder Associates in 1980; plaintiffs Roberts made their purchase in Drake Oil Technology Partners ("Drake '81") on December 12, 1981; plaintiffs Delk made their purchase in Vanguard Oil Technology Partners ("Vanguard '81") on December 28, 1981. As these three plaintiffs did not file their first complaint in this action until December 31, 1984, their claims under § 12 are time barred.

Plaintiff Gauss, however, alleges he bought his unit in the Dillon Oil Technology partnership ("Dillon '82") on or about December 28, 1982. As his claim was added in the Third Amended Complaint filed in September 1985, it is not barred by the three year absolute limit of § 13. For the reasons stated in the court's Order of May 21, the court also finds Gauss' claim is not barred by the other time limitations set forth in Section 13.[4]

For the reasons stated above, the claims under § 12 by plaintiffs Roberts, Bell, and Delk are dismissed with prejudice.

### 2. Seller Status

As plaintiffs Roberts, Delk, and Bell did not state timely claims under § 12, only those defendants who were involved in the sale of the partnership unit to plaintiff Gauss are potentially liable under § 12. The court therefore dismisses the § 12 claims against defendants Krause, Energy Associates, Basile and Taylor as none of them were involved with any entity associated with the Dillon '82 partnership. The court also dismisses the § 12 claim against defendant Pyles. Gauss alleges he became involved with AER in 1983 following Gauss' purchase of his partnership unit.

▮▮▮ Gauss has also failed to state a claim against defendant Conklin. Liability under § 12 falls only on those "whose participation in the buy-sell transaction is a substantial factor in causing the sale to take place." *Pharo v. Smith,* 621 F.2d 656, 667 (5th Cir.1980); *accord, Admiralty Fund v. Jones,* 677 F.2d 1289, 1294 (9th Cir.1982). In their opposition papers, plaintiffs suggest Conklin "substantially assisted" the sale of partnership units by either organizing them or being responsible for their success. Plaintiffs' Opposition at p. 31–32. However, a review of the allegations of the complaint belies this assertion. In paragraph 56(a), Conklin is identified as an officer of several Petrotec Entities. This status, by itself, does not suggest that he organized or was responsible for the success of the partnerships. Nor do the allegations that he assisted Heim in acquiring properties, managed the affairs of Tulesbond and other companies, and served as "escrow agent" for the collection of license fees support an inference that he was an organizer or principal actor in the affairs of the partnerships. These allegations detail a significant level of involvement in Heim's affairs, but they fail to suggest Conklin was a substantial factor in the direct sale of the partnership units.

▮▮▮ Gauss also has not stated a claim against most of the Petrotec Entities. He alleges that all 26 Petrotec Entities are somehow "sellers" of the partnership units. In the May 21 Order, the court dismissed the § 12 claims against these companies with leave to amend with greater detail concerning how all Petrotec Entities were responsible for selling the securities. Plaintiff has responded by repeating the prior claims practically verbatim and then arguing that all of the entities were "issuers" of the partnership units by virtue of the fact that they "were either responsible for organizing the partnerships or for determining their success or failure." Plaintiff's Opposition at p. 32. Though the Ninth Circuit case of *SEC v. Murphy,* 626 F.2d 633, 642 (1980), does suggest that organizing entities can be issuers, the cases

---

4. In their opposition papers on the class certification motion, defendants ask the court to reconsider its ruling on the tolling provisions of § 12(1). Having reviewed the authorities cited by the parties, the court declines to reverse its prior ruling.

cited by the Ninth Circuit in illustration involved situations where one or two entities were clearly responsible for the partnerships. *See Doran v. Petroleum Management Corp., Inc.*, 545 F.2d 893 (5th Cir.1977); *Bayoud v. Ballard*, 404 F.Supp. 417 (N.D.Tex.1975). Here plaintiffs allege that 26 companies and a multitude of individuals were all responsible for the partnerships' survival. In the absence of additional specificity as required by the terms of the May 21 Order, these allegations will not suffice to state a claim against the Petrotec Entities under § 12. The claim against American Energy Resources (AER), the corporate general partner for Dillon '82 can go forward; the § 12 claims against the remaining Petrotec Entities are dismissed.

■ Gauss has also asserted claims against various officers of AER. Gauss does not allege that he had any contact with defendants Cunningham, Bogdan, LaGuardia or McCullough. His claim must therefore be based on the theory that these officers, by virtue of their position within AER, were substantial factors in the issuance of the securities. After reviewing the allegations in all sections of the complaint detailing the activities of these defendants, the court finds plaintiff has not alleged sufficient facts to support a claim of substantial participation against them.

Plaintiff has also alleged defendant Rogen substantially participated in the sale of securities by virtue of his involvement with Elektra Energy Corp. The court finds Mr. Rogen's association with Elektra did not elevate him to the status of a seller of the partnership units.

Plaintiff Gauss has stated a claim for relief under § 12 against the remaining defendants.[5]

### D. *Claims Under § 10(b) and Rule 10b–5*

Plaintiffs have alleged that all defendants have committed various violations under § 10(b) and Rule 10b–5. Some defendants are charged with being principal vio-

lators, some are accused of secondary violations, and all are alleged to have conspired to violate the statute.

In its May 21 Order, the court acknowledged that plaintiffs' pleadings concerning many of the alleged principal violators were sufficient. The court found, however, that plaintiffs had not adequately identified which defendants were alleged to be principal violators and which were charged with secondary liability. The court therefore dismissed the Third Amended Complaint but granted leave to amend to cure this deficiency. The court also held that plaintiffs' conspiracy allegations were not adequately detailed and dismissed with leave to add the requisite details if possible. The court further questioned whether plaintiffs had adequately alleged a "transactional nexus" between their injuries and the conduct of certain defendants, but refrained from ruling on this issue until the conspiracy claims had been alleged with more detail and the motion for class certification was filed.

In response to the Fourth Amended Complaint, defendants have once again raised objections to the sufficiency of some of plaintiffs' allegations. The court will first address the challenges to the charges of primary liability and then turn to the claims of conspiracy and aiding and abetting.

### 1. Primary Liability

Many defendants argue that plaintiffs have failed to state a claim against them for primary liability under Section 10(b). The court will analyze each defendant's argument separately.

■ Plaintiffs have stated a cognizable claim against defendant Rogen. Primary liability under § 10(b) and Rule 10b–5 may be predicated on either affirmative misrepresentations, or upon omissions to state facts material to the transactions by those under a duty to disclose those facts to plaintiffs. *White v. Abrams*, 495 F.2d 724 (9th Cir.1974). Plaintiffs allege Rogen was president first of Elecktra Energy Cor-

---

5. No other defendants have challenged the suffi- ciency of plaintiffs' § 12 claims.

poration and then of Hemisphere Licensing Corporation during the period 1980 until 1984. Plaintiffs claim that by virtue of this position, Rogen knew, or was reckless in not knowing, certain material facts omitted from the partnership prospectuses. (Complaint, ¶ 55(f)). Rogen argues that he was not under any duty to disclose this information to plaintiffs. In *White v. Abrams*, the Ninth Circuit adopted a flexible standard for appraising the duty an individual owes to divulge information to investors. *Id.* at 735. The court finds plaintiffs have alleged enough facts to suggest Rogen may have had a duty to disclose additional information to investors. The question of the extent of this duty is an issue of fact not appropriate for resolution in a motion to dismiss.

 Houston Harbaugh prepared title reports which were included in some prospectuses. Plaintiffs allege Houston Harbaugh is liable as a principal under § 10(b) for failing to reveal in these reports that the prior owners of the properties were entities allegedly controlled by defendant Heim and for failing to state that the prices to be paid by the partnerships for the mineral rights were many hundred times the prices originally paid by Heim's companies.

Houston Harbaugh attacks these allegations on two grounds. First, it alleges that—even assuming the facts as pled to be true—plaintiffs have not alleged any omissions which constitute a violation under 10(b). Houston Harbaugh also claims plaintiffs have failed to allege facts which indicate it possessed the requisite scienter.

Rule 10b–5 makes it unlawful for any person "to make any untrue statement of fact or to omit to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. 240.10b–5. Certain partnership prospectuses included opinions by Houston Harbaugh stating that title to property the partnership was to acquire was vested in defendant Tulesbond, Ltd. Plaintiffs do not contest the truth of this opinion; rather, they claim the omitted information made these statements misleading.

The court does not agree. For the purposes of this motion the court accepts plaintiffs' contention that the omitted information was relevant to their investment decision. Nevertheless, this fact does not, by itself, suggest that Houston Harbaugh is liable for not including it in its title opinions. Plaintiffs have not alleged that Houston Harbaugh was retained for any purpose other than to render an opinion on record title. Therefore, Houston Harbaugh only had a duty to investigate and report matters of public record in the chain of title which may affect marketability. Houston Harbaugh fulfilled its duty by providing a title opinion related to the marketability of property, based on an examination of the public records of Butler County, Pennsylvania. Houston Harbaugh had no duty to provide information about who owned the property before Tulesbond, the relationship between Tulesbond and the partnerships, and how much the prior owners paid for the mineral rights, as they are not relevant to the state of title of the property. For this reason, the court holds that—assuming the facts as pled to be true—Houston Harbaugh did not omit any facts necessary to make its statements "not misleading."

Plaintiffs ask the court to equate this situation with those cases which have found accountants liable under § 10(b) even though their statements comported with generally accepted accounting principles. However, in those cases, the courts found the accountants' statements, while technically accurate, gave a false impression of the financial health of the company. *See e.g. In re Com. Oil/Tesoro Petroleum Corp. Sec. Lit.,* 467 F.Supp. 227 (W.D.Tex. 1979); *Marx v. Computer Sciences Corp.,* 507 F.2d 485, 492 n. 12 (9th Cir.1974). Thus, their financial statements were fundamentally misleading. Here, by contrast, the omitted statements would not have provided plaintiffs with any information about the state of title of the property, or about the partnerships' ability to purchase the desired mineral interests. The court is unwilling to extend the theory of liability under 10b–5 to include the responsibility

for the issuers of title opinions to provide information well beyond facts relating to the subject matter of the opinion. To hold under these facts that Houston Harbaugh had a duty to provide information beyond record title would place an intolerable burden on those rendering title opinions. Because Houston Harbaugh fulfilled its title examiner's obligation to report matters in the chain of title which may affect marketability, the court dismisses with prejudice plaintiffs' claim against Houston Harbaugh.

The Petrotec Entities have moved to dismiss the § 10(b) allegations against them on the grounds that plaintiffs failed to specify whether the claims were for primary or secondary liability. Paragraphs 54, 67, 79–80, and 86 of the complaint make clear that all Petrotec Entities except one (TexOil) are charged with primary liability. Therefore, this motion to dismiss is denied.

■ Defendant Baskin and Sears has also moved for dismissal. The complaint alleges Baskin and Sears prepared a materially false tax opinion which was included in the prospectus for the Boulder partnership in which plaintiff Bell invested in 1980. F.A.C. ¶ 9(a). This allegation is sufficient to state a claim under § 10(b). *See* May 21 Order, at p. 11; *Hudson v. Capital Management*, 565 F.Supp. 615 at 622 n. 3 (N.D.Cal.1983). For similar reasons, plaintiffs have also stated claims against defendants Technology Catalysts, and DiCicco (who prepared allegedly false reports included in the offering memoranda for the Drake 1981 and Dillon 1982 partnerships); against Somers and Altenbach (allegedly false tax opinion in same partnerships); against Fox and Company (allegedly false reports in the Boulder 1980 partnership); and against Lewin Energy and Kuuskraa (allegedly false reports in all partnerships in which the named plaintiffs invested).

■ Plaintiffs have also advanced claims for primary liability against other defendants who prepared allegedly false reports which were not included in the materials read by plaintiffs in connection with their investments. The court finds plaintiffs have failed to allege the requisite transactional nexus to state a claim for primary liability against these defendants. Therefore, the claims against defendants Doscher, CLD Group, Inc., Friedman and Shaftan, Schumacher and Hickey, and Frederick R. Schumacher, Ltd. are dismissed.

■ Plaintiffs have also failed to state claims for primary violations against defendants whose involvement in the partnerships was subsequent to plaintiffs' investments. For example, plaintiffs allege defendant Pyles is liable as a principal violator for his work on behalf of American Energy Resources in 1983. The court's ruling concerning the separate purchase issue makes this allegation a futile one. As no plaintiff purchased a security after 1982, no defendant whose involvement followed that date can be liable for primary or secondary liability under § 10(b). One can not be responsible for committing or assisting a fraud which has already occurred. *Hudson III*, 565 F.Supp. at 622 n. 3; *Mendelsohn v. Capital Underwriters Inc.*, 490 F.Supp. 1069, 1086 (N.D.Cal.1979). This reasoning also applies to the claim of a primary violation by Peat, Marwick. Plaintiffs' allegations of a principal violation of § 10(b) are based on financial reports issued after plaintiffs purchased their units. Therefore, plaintiffs' primary claims against Pyles and Peat, Marwick are dismissed. Plaintiffs' allegations of these defendants' liability as aiders and abettors and as conspirators are discussed *infra*.

## 2. Aiding and Abetting Liability

■ Plaintiffs have also advanced claims against a multitude of defendants for aiding and abetting the primary fraud under § 10(b). The elements of this claim are (a) the existence of a primary fraud; (b) actual knowledge by the aider and abetter of the fraud; and (c) "substantial assistance" in the perpetration of the fraud. *Harmsen v. Smith*, 693 F.2d 932, 943 (9th Cir.1982), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). Applying this standard to the claims against each defendant compels the court to dismiss

some claims and to allow others to go forward.

 Many of these aiding and abetting claims are asserted against defendants for their involvement in partnerships in which no named plaintiff invested. For example, plaintiffs advance claims against Baskin and Sears, Schumacher and Hickey, Frederick Schumacher, Ltd., and Somers and Altenbach for providing tax assistance letters included in the offering papers for partnerships in which no named plaintiff owns a unit. In a similar vein, plaintiffs assert Fox and Co. may be liable for providing tax opinions for the Wichita partnership memoranda and claim defendant Taylor may be liable for the acts he performed for the corporate general partner of the Wichita partnerships. The court finds these acts to be too attenuated from plaintiffs' injuries to provide the transactional nexus for an aiding and abetting claim.[6]

 Plaintiffs have also asserted a claim against one law firm—Friedman and Shaftan—which provided a tax assistance letter included in the Boulder '80 offering memorandum. Plaintiffs allege this defendant knew from its prior tax opinions that the tax aspects of the investment were invalid and aided and abetted the fraud by failing to disclose this fact. The court does not agree. Although the Ninth Circuit has expanded the scope of aiding and abetting to include liability for remaining silent in some circumstances, a law firm in Friedman and Shaftan's position only has a duty to disclose when it provides "knowing assistance or participation in a fraudulent scheme."[7] *Strong v. France*, 474 F.2d 747, 752 (9th Cir.1973). The court finds that mere agreement by a law firm to defend a partnership in a tax conflict does not amount to knowing participation in the fraud. In the absence of allegations of more substantial participation, Friedman and Shaftan cannot be liable for its failure to whistleblow. *See Hudson III*, at 623–24.

 Plaintiffs further allege Peat, Marwick is liable for aiding and abetting by virtue of its consent to the inclusion of its name in the confidential memoranda read by plaintiffs Roberts, Gauss and Delk. The offering documents for each Denver partnership stated that Peat, Marwick had agreed to perform accounting services for the partnership. ¶ 17(a). As with the tax assistance letters discussed above, mere agreement to provide accounting services in the future does not amount to substantial assistance in the fraud. Unlike the one of the law firm defendants in *Morgan v. Prudential Group, Inc.*, 81 F.R.D. 418 (S.D.N.Y.1978), Peat, Marwick did not issue a tax opinion or a financial statement and then allow the promoters of the partnership to refer to this opinion in the offering memoranda. *Id.* at 425 n. 6. The court will not expand the scope of § 10(b) liability to encompass professionals whose involvement in the perpetration of the alleged fraud was merely agreeing to provide professional services in the future.

 Plaintiffs have stated a claim for aiding and abetting against Somers and Altenbach for rendering securities advice to the Denver partnerships. Plaintiffs allege defendant knowingly gave false advice to the partnerships when it opined that the Denver partnerships were not integrated and did not need to be registered. A finder of fact could conclude this amounted to substantial assistance in the fraud. Defendant argues plaintiffs have failed to plead facts from which scienter can be in-

---

**6.** Plaintiffs argue their claim of conspiracy provides the requisite connection. While an adequate conspiracy claim may keep a defendant in the case, it will not·provide the transactional nexus needed to state a claim for aiding and abetting. Analysis of a claim of conspiracy is distinct from review of a claim of aiding and abetting. Although conspiracy is not an independent tort, *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C.Cir.1983), successful proof of conspiracy will make a defendant vicariously liable for the fraud. Nevertheless, an allegation of con- spiracy may not serve as a "bootstrap" method of demonstrating a transactional nexus sufficient to stating a claim for aiding and abetting. (The conspiracy allegations are discussed *infra*.)

**7.** The other two methods identified for establishing a duty to disclose—i.e., possession of inside information and consent of a director, *Strong v. France, supra*,—do not apply to Friedman and Shaftan.

ferred. Plaintiffs have pled that Somers and Altenbach's opinion was wrong and have alleged defendant knew of the falsity at the time it issued the opinion. As the remaining facts concerning scienter are within the possession of defendant, the court finds plaintiffs have plead enough to survive a motion to dismiss. This claim may be subject to an early motion for summary judgment if defendant can show the opinion was not false, or if it can demonstrate it did not know of its falsity at the time of issuance.

Plaintiffs have also successfully stated a claim against defendant Conklin. Conklin is alleged to have served as Heim's agent in this country; to have served as an officer in the technology licensing companies and served as escrow agent for collection of their fees; and to have managed the affairs of Tulesbond, Ltd. and other Petrotec companies. Plaintiffs claim Conklin knew the EOR technology was worthless because of his role as an officer of Elektra and Hemisphere. These allegations are sufficient to suggest Conklin may have substantially assisted the primary fraud.

Defendant TexOil complains that it cannot tell from the complaint whether it is charged with primary or secondary liability. As the complaint clearly indicates plaintiffs are advancing a claim for aiding and abetting against TexOil, Complaint ¶ 67, its motion to dismiss is denied.

Two technology consultants, CLD Group and Lewin and Associates, have also moved to dismiss the aiding and abetting claims against them. Plaintiffs claim CLD is liable for "providing its purported expertise in EOR technology to the partnerships syndicated in 1981–2" and for the appearance of CLD's name in the partnership memoranda as a consultant on the use of additives for oil recovery when CLD "knew" this technology was "commercially infeasible." Complaint ¶ 63(b). These allegations are not sufficient to state a claim for aiding and abetting.

Plaintiffs do not allege CLD consented to the inclusion of its name in the partnership memoranda, nor do they suggest the partnerships relied on any advice by CLD when making representations about the commercial feasibility of the technology. The court has already cautioned plaintiffs that the mere "provision of information" does not create liability for aiding and abetting. May 21 Order, p. 13–14. The allegation that CLD provided "expertise" to the partnerships is similarly infirm absent elaboration on how this expertise helped cause the fraud against plaintiffs. Therefore, the aiding and abetting claim against CLD is dismissed with prejudice.

In contrast, Lewin and Associates ("L & A") is alleged to have provided the technical expertise on EOR which was used to prepare false reports on the geologic and financial aspects of the partnerships. Complaint, ¶ 65(b). These reports were included in the memoranda for each partnership in which the named plaintiffs invested. Plaintiffs claim L & A knew this technology was ineffective and nevertheless assisted its subsidiary, Lewin Energy, in preparing these reports. A finder of fact could find this constituted substantial assistance. L & A argues plaintiffs failed to allege scienter adequately. However, plaintiffs have alleged L & A knew both that the technology was not effective and that the reports were to be included in the offering memoranda for the partnerships. The court finds these allegations are sufficient to suggest L & A knew of the fraud to be perpetrated on the investors.

### 3. Conspiracy Allegations

In the Third Amended Complaint, plaintiffs alleged that all defendants had conspired to defraud them under § 10(b). In the Order of May 21, the court dismissed this claim under Fed.R.Civ.Pro. 9(b) for lack of particularity. The Order instructed plaintiffs to provide as much detail as possible about the nature of the conspiracy, what each defendant did in furtherance, and how and when each defendant agreed to join the conspiracy. Order, at 4–5. Although the court recognized that a claim of conspiracy is not an independent tort and does not itself give rise to a cause of action, *Halberstam v. Welch*, 705 F.2d 472,

479 (D.C.Cir.1983), the court required plaintiffs to plead the conspiracy charge separately from the underlying fraud to aid analysis of the charge.

 To state a claim for conspiracy, plaintiffs must plead an agreement to participate in an unlawful act and an injury caused by an unlawful overt act performed in furtherance of the agreement. *Id.* at 477. By stating a claim under § 10(b), plaintiffs have clearly alleged an injury caused by an unlawful act. Defendants claim, however, that plaintiffs have failed to allege with specificity that all defendants agreed to participate in the scheme to defraud.

 Proof of a conspiracy does not require a showing of an explicit agreement; a demonstration of a tacit agreement is enough. *Halberstam v. Welch,* 705 F.2d at 477. The existence of this agreement may be either express or inferred from a defendant's conduct. *Gilbert v. Bagley,* 492 F.Supp. 714, 727 (M.D.N.C.1980). This rule applies to pleading claims of conspiracy as well. *Rich-Taubman Associates v. Stamford Restaurant,* 587 F.Supp. 875, 879 n. 5 (S.D.N.Y.1984); *First Federal Savings and Loan v. Oppenheim, Appel, Dixon & Co.,* 629 F.Supp. 427, 433-44 (S.D.N.Y. 1986). However, "[t]o survive a motion to dismiss, plaintiff[s] must allege with sufficient factual particularity that [defendants] reached some explicit or tacit understanding or agreement ... It is not enough to show that [defendants] might have had a common goal unless there is a factually specific allegation that they directed themselves towards this [wrongful goal] by virtue of a mutual understanding or agreement." *Hauptmann v. Wilentz,* 570 F.Supp. 351, 382 (D.N.J.1983) (citing, *inter alia, Tarkowski v. Bartlett Realty,* 644 F.2d 1204, 1206 (7th Cir.1980); *Slotnick v. Staviskey,* 560 F.2d 31 (1st Cir.1977), *cert. denied,* 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978)).

Plaintiffs assert they have explicitly alleged defendants' agreement to participate in the conspiracy. Paragraph 76 of the complaint alleges each defendant "knowingly and willfully joined together in a conspiracy to defraud purchasers of interests in the [partnerships.]" Paragraph 5 contains similar language. These allegations, by themselves, are not sufficiently particular to satisfy the requirements of Rule 9(b); they are conclusory claims of agreement similar to the allegations previously rejected by this court. *See e.g. Hudson I,* at 99,895. The court's prior order made clear that when, as here, plaintiffs plead on information and belief, they must set forth a statement of facts on which this belief is founded. Order, 4-5. When facts corroborating this belief are in the exclusive possession of defendants, plaintiffs were directed to indicate this. *Id.*

Plaintiffs argue they have complied with the terms of this court's order and have alleged sufficient facts about each defendant's participation in the conspiracy to satisfy the liberal rules of federal pleading. The court agrees that for many defendants the Fourth Amended Complaint adequately alleges facts demonstrating an agreement to conspire; for other defendants, however, the complaint does not meet the strictures of Rule 9(b).

 The greatest shortcoming in pleading the conspiracy concerns the allegations against the professional defendants. Plaintiffs have advanced conspiracy claims against most of the professionals associated with the partnerships. As discussed above, the named plaintiffs are unable to assert valid claims for primary liability or for aiding and abetting the fraud against those defendants not involved with the partnerships in which they invested. Plaintiffs therefore seek to maintain causes of action under § 10(b) against these defendants by asserting they conspired with others to defraud plaintiffs.

The allegations against these professional defendants are similar to one another. In each case, the defendant is alleged to have reached an agreement with the general partner to provide professional services to the partnership. Plaintiffs then state, "the dates and details of the meetings leading up to the agreement, as well as the terms of the agreement itself, are unknown to plaintiffs but are within the knowledge

of defendants." Each defendant is then alleged to have done an act in furtherance of the conspiracy. The acts performed by each defendant typically involved issuing a false opinion, or misleading projection. See e.g. Complaint, ¶ 83(a), 87(a–d), 89(a–f).

These allegations are deficient as they do not assert with the requisite particularity that defendants agreed to participate in a wrongful act. Plaintiffs allege each defendant agreed to provide professional services and "thereafter" performed a wrongful act in furtherance of the conspiracy. These allegations suggest the professional defendants did reach some agreement with the general partners, but they do not suggest the defendants reached an understanding to conduct an illegal scheme to defraud.

Plaintiffs assert these allegations create an inference that the professional defendants reached an agreement to perform a wrongful act. While a conspiracy claim may survive a motion to dismiss if it includes sufficient facts to support an inference of agreement, *Rich-Taubman, supra,* the factual allegations in this complaint do not support such an inference. Plaintiffs' claim that each professional defendant performed a wrongful act cannot, by itself, create an inference of a conspiratorial agreement. To allow a claim to go forward on this allegation alone would conflate the second element of a conspiracy claim—the act done in furtherance—into the agreement element.[8]

Moreover, for those professional defendants who serviced the Wichita partnerships, the facts alleged do not suggest they "agreed" to participate in any scheme which involved the Denver or Manhattan partnerships. Plaintiffs allege each of these defendants was approached by defendant Krause, the general partner of the Wichita partnerships. Complaint, ¶ 89. None of the facts alleged support an inference that the "Wichita" professional defendants reached any kind of understanding with regard to the partnerships in

which the named plaintiffs invested. The absence of this allegation makes the named plaintiffs' claims against these "remote" defendants extremely attenuated.

The court recognizes that "great leeway should be allowed the pleader" of a conspiracy since the details are often in the hands of the defendants. 2A J. Moore, *Moore's Federal Practice,* ¶ 8.17[5] at 8–125 (2d. Ed.1985). Nevertheless, the court is unwilling to allow a broadly painted allegation of worldwide conspiracy to serve as the only mechanism for keeping professional defendants in a lawsuit based on fraud. The Ninth Circuit recently cautioned courts against allowing claims of fraud to go forward without sufficiently particular factual allegations, "especially [against] professional defendants whose reputations in their fields of expertise are most sensitive to slander." *Semegen v. Weidner,* 780 F.2d 727, 731, (1985).

The cases cited by plaintiffs as examples of successful conspiracy allegations differ significantly from the complaint before the court. *Hirt v. UM Leasing Corp.,* 614 F.Supp. 1066 (D.C.Neb.1985), for example, did not involve the issue raised here; the pleading deficiencies asserted by defendants did not address the question of agreement. *Id.* at 1070. In *Whitbread (US) Holdings v. Rothschild,* 630 F.Supp. 972 (S.D.N.Y.1986), the complaint specifically identified the joint venture agreement entered into by the alleged conspirators. *Id.* at 974, 983. And in those cases where the courts allowed a conspiracy allegation to go foreward, the alleged scheme involved a relatively modest number of actors, all of whom were directly involved in the tortious activity. *See e.g. Rich-Taubman, supra, First Fed. Savings and Loan, supra.* Here, plaintiffs have advanced conspiracy claims against a multitude of professional defendants whose alleged involvement in the conspiracy came in partnerships in which no named plaintiff invested.

---

**8.** Plaintiffs also do not allege that any of the professional defendants had an interest in the success of the partnerships or would derive any benefit from the success of the alleged fraud.

The absence of this allegation removes much of the force from plaintiffs' argument concerning the alleged conspiratorial agreement of the professional defendants.

Under these circumstances, in light of the Ninth Circuit's admonition in *Semegan*, and because of the absence of factually specific allegations of agreement, the court hereby dismisses with prejudice the conspiracy claims against the professional defendants involved in partnerships in which the named plaintiffs have not invested, namely Schumacher & Hickey, and Frederick Schumacher, Ltd. For similar reasons, the court dismisses with prejudice the conspiracy claims against Houston Harbaugh, Peat, Marwick, the CLD Group, Taylor, Doscher, The Doscher Group, Inc., Case Engineering, and Friedman and Shaftan. The court also dismisses the conspiracy claims against Baskin and Sears, Lewin & Associates, Lewin Energy, DiCicco, Kuuskraa, Technology Catalysts, Fox & Co., Tex-Oil, Robert Altenbach and Somers and Altenbach; however, these claims are dismissed without prejudice to renewal if further discovery permits plaintiffs to allege agreement with more particularity.[9]

■ Plaintiffs have also alleged that certain individual defendants conspired to defraud under § 10(b). Many of these defendants were involved with the corporate general partners for the partnerships and with the technology licensing firms Elektra/Hemisphere.[10] Given the nature of the responsibilities each defendant carried with these firms, and in light of the alleged involvement these firms had with the organization and operation of the purported scheme, the court finds plaintiffs have successfully plead a claim of conspiracy against defendants Heim, Hilpert, Savery, Conklin, Basile, Coppage, Rogen, Bogdan, Cunningham, LaGuardia, McCullough and Pyles. The Court also finds plaintiffs' conspiracy claims may go forward against the Manhattan and Denver partnerships, the Petrotec Systems, Inc., Petrotec Marketing Corporation, Petrotec Development and Production, Ltd., Elektra Energy Corporation, Hemisphere Licensing Corporation, Petroleum Sciences, Inc., GEDCO, American Energy Resources, AER Investments, Inc., and Forsee Group, Ltd.

The court did not receive motions to dismiss from defendants Krause and Energy Associates. No named plaintiff invested in any partnership in which these defendants were involved. However, as plaintiffs allege these defendants were recruited by the principals of the conspiracy, and as these defendants were responsible for the organization of the Wichita partnerships and thus were most familiar with the activities of all participants, the court will not dismiss the conspiracy claims against them *sua sponte*. Finally, the court did not receive motions to dismiss from defendants Puhar, Fiechter, the Wichita partnerships and the remaining Petrotec entities. The court will also not dismiss the conspiracy claims against these defendants *sua sponte*.

### E. "Control" Claims Under § 15 and § 20

**1. Section 20(a) of the Securities Exchange Act**

Plaintiffs have advanced claims under § 20(a) of the 1934 Act against Heim, Savery, Hilpert, the technology licensors (Elektra/Hemisphere) and a variety of individuals associated with the operations of the partnerships. The court will discuss each of these claims in turn.

Plaintiffs allege each of these defendants controlled the activities of persons who violated § 10(b). "The term 'control' means the possession, direct or indirect, of the power to direct or cause the direction or management and policies of a person,

---

**9.** Plaintiffs have already stated cognizable claims against these defendants for primary violations or for aiding and abetting. One of the Ninth Circuit's main concerns in *Segeman* was to prevent the use of discovery against professional defendants "as a pretext for the discovery of unknown wrongs." *Segeman*, 780 F.2d at 731. As these defendants will already be subject to discovery, dismissing the claims against them without prejudice will not burden them in any fashion. If plaintiffs discover additional evidence of a conspiratorial agreement while pursuing their other § 10(b) claims, they will be permitted to assert them if no prejudice to defendants ensues.

**10.** This includes defendants Bogdan, Rogen, Pyles, Cunningham, LaGuardia, Conklin and McCullough.

whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405 (cited with approval in *Safeway Portland Employees Federal Credit Union v. C.H. Wagner & Co.*, 501 F.2d 1120, 1124 n. 17 (9th Cir.1974).

 The court's prior rulings in this order compel the dismissal of this cause of action against some defendants. Defendants Krause and Taylor, for example, cannot be liable for control violations associated with the Witchita partnerships since the court has dismissed the primary liability claims associated with these partnerships. In a similar vein, defendant Pyles cannot be liable for controlling violations which occurred before his association with AER.

 In the May 21 Order, the court held that plaintiffs had stated a claim against defendants Heim and Savery but dismissed the claims against the Petrotec Entities with instructions to identify how each Petrotec Company exercises control. Plaintiffs now limit their control claims to the Petrotec technology licensors. Plaintiffs assert that since Heim and Savery controlled both the partnerships and Elektra/Hemisphere, and since Elektra/Hemisphere existed solely "to license purported EOR technologies to the partnerships and serve as the vehicles by which substantial sums of money were misappropriated ..." (¶ 108), Elektra/Hemisphere are subject to control person liability as well. The court does not agree. The fact that Heim and Savery may have controlled both the partnerships and the licensors does not mean that the licensors therefore also controlled the partnerships. Moreover, the other allegations in the complaint do not support the bald allegation of control asserted in this cause of action. Plaintiffs have not alleged what relationship (e.g. stock ownership, contract or other) gave the licensors control over the partnerships. For these reasons, the court dismisses the § 20(a) claims against Elektra Oil, Elektra Energy, Hemisphere and Petrotec Systems.

Plaintiffs have also alleged defendant Rogen is liable for control violations by virtue of his role in Elektra Energy, Hemisphere, and Petroleum Sciences. The claim against defendants Hilpert and Conklin are based on their roles as offficers in Elektra/Hemisphere and Petrotec Systems. In light of the above ruling concerning the licensors, the claims against Rogen, Hilpert and Conklin are dismissed as well.

 Plaintiffs have stated a claim against defendants Basile and Coppage, the individual general partners for the Manhattan and Denver partnerships. Plaintiffs have also alleged sufficient detail concerning the activities of the officers of AER to state a claim against them.

### 2. Section 15 of the Securities Act

 Section 15 of the Securities Act imposes secondary liability upon those who controlled the activities of persons who violated § 12. As only plaintiff Gauss has stated a claim under § 12, the § 15 cause of action is dismissed against defendant Basile as well as the other defendants identified above.

### F. *Pendent State Claims*

 Plaintiffs have advanced a variety of state statutory and common law claims. As the court has dismissed the federal claims against several defendants, there is no jurisdiction to bring the state claims against these defendants. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The court therefore dismisses the pendent claims against defendants Taylor, Doscher, CLD Group, the Doscher Group, Case Engineering, Schumacher & Hickey, Frederick Schumacher Ltd., Houston Harbaugh, Friedman and Shaftan, and Peat, Marwick. The court will next consider each of the remaining state law issues raised by defendants.

### 1. Professional Malpractice

 Lewin and Associates assert they cannot be liable for malpractice as they did not author any opinion contained in the offering circulars. Plaintiffs concede that only authors can be liable for malpractice. They assert, however, that Lewin and Associates is liable for the CLD Group opinion signed by defendant Kuuskraa, vice presi-

dent of Lewin and Associates. This opinion appeared in the offering memorandum for partnerships in which no named plaintiff invested and thus cannot serve as the basis for a malpractice claim. Plaintiffs also assert Lewin and Associates is liable for other opinions authored by CLD Group which were read by plaintiffs in connection with their investments. Plaintiffs have cited no authority for the proposition that Lewin and Associates' partial ownership of CLD Group, Inc. can make Lewin liable for CLD's professional malpractice. As a result, the court dismisses the malpractice claim against Lewin and Associates.

### 2. California Corporations Law Claims

■ Several defendants have also attacked the sufficiency of plaintiffs claims under California securities laws. Lewin and Associates claim they cannot be liable under Cal.Corp.Code § 25504.2 because they did not author an opinion read by the named plaintiffs. For the reasons stated above, the court dismisses this claim against Lewin and Associates.

■ The claim that defendant Pyles violated § 25504 and § 25504.1 is also dismissed. Pyles joined AER after all of the named plaintiffs had purchased their securities and therefore cannot be liable for aiding and abetting or for control violations.

■ Defendant Rogen has moved to dismiss the claim against him under § 25502 for control violation. For the reasons discussed *infra,* the court finds Rogen cannot be liable under § 25504. Plaintiffs' claims under this section are limited to those defendants against whom plaintiffs have stated a cognizable claim under § 15 of the Securities Act.

■ Defendant Baskin and Sears moves to dismiss the § 25506.1 claim against it. The court finds the three year statute of limitations in this section to be an absolute limit not tolled by any allegations of fraudulent concealment. The plain

language of the statute is similar to that of 15 U.S.C. § 77m and the analysis of this section above is equally applicable here. Therefore, this claim is dismissed.

### 3. Remaining Common Law Claims

■ Defendant Pyles also moves to dismiss the negligent misrepresentation claim. He argues that the statute requires a "positive assertion", while plaintiffs' claim is based on his alleged failure to come forward with information of the fraud. As plaintiffs have not alleged Pyles made any positive representations, the court finds he cannot be liable for negligent misrepresentation. *See Huber, Hunter & Nichols, Inc. v. Moore,* 67 Cal.App.3d 278, 304, 136 Cal. Rptr. 603 (1977).

■ Plaintiffs have also advanced a claim under a common law theory of fraud and deceit. The court dismissed with prejudice a very similar claim entitled "knowing and reckless misrepresentation" in the Third Amended Complaint. After reconsidering the grounds for dismissing the earlier claim, the court finds plaintiffs have stated a cognizable claim for fraud and deceit against all defendants upon whom plaintiffs relied in making their investments. Finally, the court finds that plaintiffs may go forward with the common law conspiracy claims against the defendants whom they've stated cognizable conspiracy claims under section 10(b).

### III. CLASS CERTIFICATION

■ Plaintiffs seek certification of a class defined as "[a]ll persons, except defendants, who purchased interests in any of the Oil Technology Group Partnerships ...'' If certified, this class would include some 2920 investors who purchased interests in any of the 40 Manhattan, Denver or Wichita partnerships.[11]

Defendants raise a general challenge to the propriety of certifying such a "global" class in this case. In addition, they raise specific challenges to the state law and separate purchase claims and the adequacy

---

**11.** It is not clear to the court exactly how many partnerships exist. Plaintiffs allege there are 40 partnerships. Defendants claim there are only

**39.** Until this matter is resolved, the court will assume plaintiffs' allegations are true, and presume 40 partnerships exist.

of particular named plaintiffs to represent the class.

### A. *Requirements of Rule 23*

Under Fed.R.Civ.P. 23(a), plaintiffs must satisfy all of the following requirements before a class can be certified: 1) numerosity—the class must be so numerous that joinder of all members is impracticable; 2) commonality—there must be questions of law or fact common to the class; 3) typicality—the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and 4) adequacy—the representative parties must fairly and adequately protect the interests of the class.

In addition, plaintiffs must satisfy one of the elements of Rule 23(b). Here plaintiffs seek to certify a class under Rule 23(b)(3), which requires that the court find that "questions of law or fact common to the members of the class predominate over questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Before addressing each of these requirements, a few initial observations are appropriate. The Ninth Circuit and the Northern District in particular have taken a liberal view of class certification in securities litigation. See, *e.g., Blackie v. Barrack,* 524 F.2d 891, 903 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *In Re Activision Securities Litigation,* 621 F.Supp. 415, 428 (N.D.Cal. 1985). Further, in determining whether to certify this class, this court must only determine whether the prerequisites of Rule 23 have been met. Indeed, "[t]he question [on class certification] is not whether the ... plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974), *quoting with approval, Miller v. Mackey International, Inc.,* 452 F.2d 424, 429 (5th Cir.1971).

### B. *Requirements of Rule 23(a)*

#### 1. Numerosity

The first prong under Rule 23(a) requires that the class be sufficiently numerous that joinder of all class members is impracticable. This action involves some 2920 members who purchased interests in the Manhattan, Denver or Wichita partnerships. Since the size of this proposed class is so numerous that joinder would be impracticable, the court finds the numerosity requirement is satisfied.

#### 2. Commonality

The second requirement of Rule 23(a) is that the class members must have questions of law or fact in common. Plaintiffs claim the commonality requirement is met for two reasons. First, the complaint delineates a conspiracy, concerted scheme and common course of conduct. Second, all of the Oil Technology Group Partnership interests are alleged to have been offered and sold pursuant to substantially similar offering memoranda, which contained the identical omissions and misrepresentations of material facts. Each offering memoranda is alleged to omit and/or misrepresent the following material facts: 1) that Heim, Savery and the so-called independent technology licensors not only formulated the idea for the creation of the partnerships, but actually controlled the partnerships' operations, including the terms of partnership contracts and the identity of partnership consultants; 2) that the represented EOR technologies either did not exist or were known to be commercially infeasible in light of the excessive license fees paid by the partnerships for their use; 3) that the tax deductions promised to the investors could not be obtained; and 4) that each of the partnerships was part of a single plan of financing and would not conduct its own business and maintain its own books and records. Despite the fact each of the 40 partnerships put out separate partnership offerings over a 5–year period involving different written materials and different groups of defendants, plaintiffs claim common questions of law and fact exist for all members of the class because of these com-

mon alleged misrepresentations and omissions.

To support the commonality requirement, plaintiffs rely on *Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975), and *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir.1964). In both of these cases different representations at different times were made to investors. Yet, in *Blackie*, because plaintiffs alleged a "common course of conduct" of substantially similar omissions and misrepresentations which allegedly affected all the class members in the same manner, the Ninth Circuit found the common question requirement was satisfied. *Blackie, supra*, 524 F.2d at 902–903. Similarly, in *Harris*, since the complaint alleged a conspiracy or common course of conduct by means of false statements and material omissions, the court found the commonality requirement was met. *Harris, supra*, 329 F.2d at 914–15. As plaintiffs allege a conspiracy, concerted scheme and common course of conduct of substantially similar omissions and misrepresentations, which allegedly affected all the class members in the same manner, the court finds plaintiffs have met the commonality requirement under the standard set forth in *Blackie* and *Harris*.

While the court finds the class members' claims involve common questions of law and fact, the court notes that each of the aforementioned omissions and misrepresentations alleged by plaintiffs assumes the existence of a conspiracy or concerted scheme. As mentioned above, in determining class certification, the court must not consider the merits of the underlying action, *Eisen v. Carlisle-Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974); *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975), and thus must not now address the merits of plaintiffs' conspiracy allegations or of the alleged omissions and misrepresentations. Yet, in the ensuing stages of the litigation, the court will closely examine the merits of plaintiffs' conspiracy and concerted scheme allegations. In order to justify the continuation of this litigation with a "global" plaintiff class, plaintiffs must establish the basis for these allegations. If plaintiffs fail

to establish the existence of a conspiracy or concerted scheme, and thus that the substantially similar offering memoranda contained the identical omissions and misrepresentations of fact, the court may be forced to decertify the class for failure to meet the commonality requirement.

3. Typicality

Under this third requirement of Rule 23(a), the named plaintiffs must present claims that are "typical" of the class. Plaintiffs claim the typicality requirement is met because the named plaintiffs, like the other class members, were injured by purchasing the same unregistered securities pursuant to documents containing identical or substantially similar omissions and misrepresentations of material fact. Defendants claim that *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir.1973) prevents the named plaintiffs from proceeding on behalf of plaintiffs who invested in partnerships in which the named plaintiffs did not invest. In *La Mar*, the Ninth Circuit held that when the representative plaintiff does not have a claim against all defendants, a class may not be certified for failure to meet, among others, the typicality requirement. *La Mar, supra*, 489 F.2d at 465. Because in this case the named plaintiffs invested in only four limited partnerships, and yet are attempting to represent class members who invested in 40 different partnerships, defendants claim a global class should not be certified. The court does not agree.

In *La Mar*, the Ninth Circuit held that the typicality requirement is met even where the named plaintiffs did not deal directly with all defendants, provided a concerted scheme or conspiracy is alleged. *La Mar, supra*, 489 F.2d at 466. The court finds that plaintiffs' claims fall within each of the *La Mar* conspiracy and concerted scheme exceptions. First, in the pending motions to dismiss this court held that plaintiffs have made adequate conspiracy allegations as to certain defendants. These allegations bring this case squarely within the conspiracy exception. Second, as plaintiffs have adequately alleged that the same

omissions and misrepresentations of material fact infected all the offerings, these allegations fall within the *La Mar* concerted scheme exception.

As plaintiffs' claims fall within these *La Mar* exceptions, each plaintiff need not have a claim against each defendant in order to fulfill the typicality requirement. However, as was explained above, should plaintiff through discovery fail to establish the basis for the conspiracy or concerted scheme allegations, the court may be forced to decertify the class for failure to meet the typicality requirement.

### 4. Adequacy of Representation

The fourth prong of Rule 23(a) mandates that the plaintiffs must fairly and adequately protect the interests of the class. Two criteria exist for determining the adequacy of representation of a class: first, counsel for the named class representative must have the competence to prosecute the litigation; and second, there can be no disabling conflicts between the interests of the named class representatives and the members of the class. *See, Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978); *In re Victor Technologies Securities Litigation*, 102 F.R.D. 53, 62 (N.D.Cal.1984).

Defendants do not dispute the competence of counsel, and the court notes that class counsel for the plaintiffs have ample experience in bringing sophisticated securities fraud class action suits. Defendants do, however, claim a disabling conflict of interest exists between the named representatives and the absent class members who are asserting in United States Tax Court proceedings the validity of tax deductions taken on partnership investments. In addition, defendants challenge the adequacy of two of the named representatives, Jack Bell and Arthur Gauss.

First, the court is not persuaded by defendants' conflict of interest argument. Court have long recognized the use of the "opt out" mechanism to ameliorate class conflicts. See *Siegel v. Chicken Delight, Inc.*, 271 F.Supp. 722 (N.D.Cal.1967), *rev'd on other grounds sub nom, Chicken De-*

*light, Inc. v. Harris*, 412 F.2d 830 (9th Cir.1969); *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir.1978); *Hudson v. Capital Management International, Inc.*, 565 F.Supp. 615 (N.D.Cal. 1983). Whatever the resolution of the U.S. Tax Court claims, if any potential conflict exists, it may be eliminated by individual class members' use of the opt-out mechanism provided under Rule 23(c)(2). If numerosity problems were to arise because so many class members exercised their opt-out right, the court could decertify the class at that time. *Hudson*, 565 F.Supp. at 631.

The court also finds plaintiffs Bell and Gauss should be certified as class representatives. Defendants argue Mr. Bell cannot be certified as a representative because 1) his professed disinterest in the tax advantages of the Boulder partnership makes him an inadequate and atypical representative; 2) he received advice from an investment advisor that differed from the representations made in the offering memorandum for Boulder, thus rendering him inadequate and atypical; and 3) his rejection of the rescission offer, his attempt to remove Mr. Basile as individual general partner, and his meeting with the corporate general partner make his "individual motivations, investment desires and mitigation of damages individualized," thus rendering him inadequate and atypical.

The court is not persuaded by any of these challenges. None of the problems is so significant as to preclude Mr. Bell from acting as an adequate class representative. First, even if Mr. Bell's investment was not entirely tax related, his claim stems from the same event, practice or course of conduct and legal theory that forms the basis of the claims of all class members. Mr. Bell's relatively less emphasis on the tax advantages as a reason for investment does not render him an atypical or inadequate representative. See *Hudson v. Capital Management International, Inc.* No. C–81–1737, slip op. at 20. (N.D. Cal., March 7, 1984) ("Hudson IV") [Available on WESTLAW, DCT database].

■ Second, even if Mr. Bell had received information from his investment advisor, the confidential memorandum itself stated that each limited partner should consult his personal attorney, accountant, and other advisors as to the legal, tax, economic and related aspects of the investment. Thus, Mr. Bell's reliance on an adviser renders him more typical than atypical. Moreover, the Ninth Circuit has held that a proposed class representative is not rendered atypical by virtue of reliance on third parties. *Keirnan v. Homeland, Inc.,* 611 F.2d 785, 789 (9th Cir.1980).

■ Finally, none of the circumstances involving Mr. Bell—his rejection of the recision offer, his effort to unseat Mr. Basile, and his meeting with a corporate general partner of the Boulder partnership—renders Mr. Bell atypical or inadequate. Plaintiffs and defendants agree on the factual backround regarding Mr. Bell and the facts are as follows. Mr. Bell received an offer to rescind his investment in Boulder based on, *inter alia,* the formerly undisclosed fact that defendant Richard Basile, Boulder's individual general partner, had previously been sanctioned by the Securities and Exchange Commission (SEC). Upon learning of Mr. Basile's SEC sanctions, Mr. Bell, though rejecting the rescission offer, attempted to unseat Mr. Basile as individual general partner. In addition, Mr. Bell visited Boulder's corporate general partner to apparently assure himself that the partnership's operations were proceeding according to plan.

First, the rescission offer directed to Mr. Bell was apparently also disseminated to the other investors in his partnership, thereby making Mr. Bell typical of all other investors. Moreover, the rescission offer does not affect Mr. Bell's typicality because his claims are based on omissions and misrepresentations of material fact that were not disclosed in the rescission offer. Second, Mr. Bell's effort to unseat Mr. Basile is irrelevant to the typicality of the claims arising from the confidential memoranda, because there was no disclosure of the facts underlying these claims at the time of his ouster activities. Finally,

Mr. Bell's meeting with the corporate general partner is irrelevant because at that meeting Mr. Bell was advised that the partnership was operating as planned and was assured that Mr. Basile's conduct as general partner was proper.

■ In addition to claiming plaintiff Bell is an inadequate representative, defendants argue plaintiff Gauss cannot be certified as a class representative because contentions made on his behalf in a tax petition filed in the U.S. Tax Court create a disabling conflict of interest with the class members. But, as Judge Patel concluded in *Hudson IV,* a class representative who files a potentially contradictory tax petition need not be disqualified from acting as a class representative. *Hudson IV* at 19.

### C. *Requirements of Rule 23(b)(3)*

Under Rule 23(b), once the four prerequisites of 23(a) have been met, the class to be certified must also qualify under one of the three provisions of Rule 23(b). In this action, plaintiffs seek certification under Rule 23(b)(3). Rule 23(b)(3) requires that the court find that common issues of law or fact predominate over individual issues, and that a class action is a superior form of adjudicating the dispute.

Plaintiffs claim that common questions of law and fact predominate over individual issues because all of the claims arise out of alleged omissions and misrepresentations of material fact appearing in substantially similar offering documents. As mentioned above, the offering materials for each partnership are alleged to be misleading in the same respects.

Defendants assert that common questions of fact or law do not predominate for two primary reasons. First, there exist material variations in the representations made to investors, i.e., that each of the 40 partnerships put out separate partnership offerings over a 5-year period involving different written materials and different groups of defendants. As such, defendants argue, the numerous individual differences overshadow the few common issues. Second, because proof of reliance is re-

quired, reliance is an individual issue predominating over any common issues.

The court finds common questions of law and fact do predominate over any questions affecting individual members: because plaintiffs allege the claimed omissions or misrepresentations of material fact are substantially similar for all investors, proof of liability as to one should constitute proof as to all. *Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975); *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir.1964). This finding, however, is qualified by the court's previous message. Since the omissions and misrepresentations claimed by plaintiffs assume the existence of a conspiracy or concerted scheme, plaintiffs must establish the basis for the conspiracy or concerted scheme allegations. Should plaintiffs fail to substantiate these allegations, and thus that the substantially similar offering memoranda contained the identical omissions and misrepresentations of fact, the court will be forced to decertify the class for failure to meet the predominance requirement. For if no conspiracy or concerted scheme exists, the numerous differences in the representations made to investors would overshadow any common issues.

The court also finds that reliance is not a predominating individual issue. Where the complaint, as in this case, is based primarily on claims of misrepresentation and omission, courts presume reliance at the class certification stage. *Blackie v. Barrack*, 524 F.2d at 905–06; *Arthur Young & Company v. United States District Court*, 549 F.2d 686, 695 (9th Cir.1976), *cert. denied*, 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977). Because individual reliance is presumed, common questions predominate over individual issues.[12]

Finally, the court finds that under Rule 23(b)(3) employing the class action device is the superior mode for adjudicating this case. Should unworkable manageability problems arise in the future, the court could decertify the class to provide for the fair and efficient adjudication of the case.

1. State Law Claims

a. Common Law Claims

In addition to the general objection to the certification of a global plaintiff class for failure to meet the predominance requirement, defendants specifically argue the state common law claims should not be certified because individual choice-of-law questions do not predominate over common questions. Citing the recent Supreme Court opinion, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), defendants assert this court could not constitutionally apply the law of any single state, including California, to all the class members' state law claims and, as a consequence, common issues of law or fact will not predominate over individual issues. In support of this contention, defendants note that the class members reside in some 37 states and 2 foreign countries, and that the relevant laws of these jurisdictions materially differ from those of California.

In *Harmsen v. Smith*, 693 F.2d 932, 946–7 (9th Cir.1982), *cert. denied*, the Ninth Circuit held that a district court addressing a conflict of law question for pendent securities claims is required to follow California choice-of-law rules. California has adopted the governmental interest approach to choice of law questions. *Nelson v. Tiffany Industries, Inc.*, 778 F.2d 533, 534 (9th Cir.1985). Under the three-part approach defined in *Nelson* and *Harmsen*, the burden is on the defendants to show: 1) a true conflict exists; 2) each state has an interest in applying its own law, and 3) if each state has such an interest, which state's interest would be more impaired should its law not be applied. *Harmsen v. Smith*, 693 F.2d at 946–47; *In re Activision Securities Litigation*, 621 F.Supp 415, 431 (N.D.Cal.1985).

---

**12.** Defendants specifically argue that plaintiffs' separate purchase claim raises individual reliance questions and thus should not be certified as a class action. The court granted Peat, Marwick's motion for partial summary judgment regarding plaintiffs' separate purchase claim, thus mooting the necessity for ruling on defendants' argument here.

Defendants have shown that material differences do exist between California law and the law of the other states. However, they have failed to show why California law would not apply in this case. The courts of this district have presumed for class certification purposes that California law will apply when the defendants have not successfully argued prior to the class certification motion that, under California choice-of-law rules, the law of another jurisdiction will apply. *See Activision,* 621 F.Supp. at 430–431, *motion to reconsider class certification denied,* No. C–83–4639(A) MHP (N.D.Cal. Dec. 2, 1985) [Available on WESTLAW, DCT database]; *In re Diasonics Securities Litigation,* 599 F.Supp. 447, *motion for decertification denied,* No. C–83–4584 RFP (N.D.Cal. Feb. 26, 1986); *In re Pizza Time Theatre Securities Litigation,* 112 F.R.D. 15 (N.D.Cal. 1986); *In re Computer Memories Securities Litigation,* 111 F.R.D. 675 (N.D.Cal. Aug. 26, 1986). The court adopts this approach for this case. Defendants have not requested that this court apply the law of another jurisdiction, nor have they met their burden of showing that other states' interests would be more impaired than California's if the court were to use California law. Accordingly, this court will apply California law unless defendants can show the interest of other states in having their law followed is greater than California's interest in applying its own laws. If the defendants subsequently raise choice-of-law questions which render the common law claims inappropriate for class treatment, the court will consider a decertification motion at that time.

The court now turns to the question of whether California law may be constitutionally applied to the class members' common law claims. The Supreme Court's decision in *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), provides the constitutional limitations on this Circuit's choice-of-law analysis. In *Shutts,* the Court formulated a two-step analysis for determining whether a state may constitutionally apply its law to all of the claims of a nationwide class. First, the district court must determine whether the forum state's law conflicts with any other state law which could apply. Second, if a conflict exists, the court must determine whether the forum has "a 'significant contact or aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests in order to ensure that the choice of [forum] law is not arbitrary or unfair." *Id.* at 2980, quoting in part *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 312–13, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981). In *Shutts,* approximately 28,000 royalty owners brought an action in Kansas state court to recover interest on their royalty payments. Because only 3% of the plaintiffs and roughly one-quarter of one percent of the leases involved in the lawsuit had any connection with the state of Kansas, the Supreme Court held the trial court's application of Kansas law to every claim in the case was arbitrary and unfair and thus exceeded constitutional limits. *Id.*

In this case the court finds "a significant contact or aggregation of contacts" to meet the requirements of *Shutts.* Plaintiffs allege the following contacts: 1) about 25% of all the limited partners in the Denver and Manhattan partnerships are residents in California; 2) eight of the Denver partnerships, the 1981–1983 partnerships, are headquartered in California; 3) the individual general partner of the 1981–1983 Denver partnerships resides in California; 4) during the period when the 1981–1982 Denver partnerships were initially offered and sold, the corporate general partner, American Energy Resources, Inc., maintained an office in California, from which it engaged in sales activities, including the dissemination of confidential memoranda; and 5) in 1985, the Manhattan and Denver partnerships engaged in a joint venture in California.

The foregoing allegations, if true, constitute a significant contact between California and the claims asserted by each of the class members such that application of California law in this case would be neither arbitrary nor unfair. The facts of this case are readily distinguishable from those in *Shutts,* in which the vast majority of class

members had no contact with the forum state. In this case, a plurality of class members, some 25% of 2900 investors, have significant contacts with California.

■ Finally, contrary to defendants' contention, *Shutts* does not require the court to undertake an individual choice-of-law inquiry into the claims of each and every plaintiff. *In re Activision Securities Litigation, supra,* ¶ 92,397 at 92,440; *In re Computer Memories Securities Litigation,* 111 F.R.D. 675, *Order Granting Motions for Class Certification,* at p. 22. *Shutts* requires only that a threshold due process inquiry be made into whether the application of a given state's law to the claims of all class members would be arbitrary or unfair.

Accordingly, the court provisionally certifies plaintiffs' state common law claims. However, if at some later date defendants establish that the interests of other states outweigh California's interest in having its law applied to plaintiffs' common law claims, the court will have to determine which state law should be applied under California choice-of-law rules and whether, in light of that determination, class treatment would be unmanageable. In addition, the court notes that it has not engaged in extensive statistical analysis of all the plaintiff investors' and defendant entities' contacts to California. Until the defendants supply the court with a statistical analysis demonstrating why application of California law in this case would be arbitrary or unfair, on the basis of the facts now before the court, certification of the pendent state common law claims is proper.

b. State Statutory Claims

■ Finally, defendants argue that certification of a global class for the state statutory claims violates the statutory requirements of Cal.Corp.Code § 25008(b). They argue that the court should only permit certification of a class of California investors. The court agrees.

Cal.Corp.Code § 25008(b) in relevant part provides:

An offer to sell or to buy is made in this state when the offer either originates from this state or is directed by the offeror to this state and received at the place to which it is directed. An offer to buy or to sell is accepted in this state when acceptance is communicated to the offeror in this state ...

Hence, the jurisdictional prerequisites of § 25008(b) are satisfied when offers of securities are made from California to persons outside the state, or when acceptance of the offer is directed to a person within California. *See In re Victor Technologies Securities Litigation,* 102 F.R.D. 53, 60 (1984). Accordingly, the court certifies a class for the California Corporations Code claims of those who accepted an offer emanating from California or who purchased their partnership interests in California.

CONCLUSION

In accordance with the foregoing, the court provisionally certifies a "global" plaintiff class for the §§ 10(b), 12, 15, 20 and state common law claims. The court also certifies a class of California investors for the state statutory claims.

However, it should be clearly understood that the court is deeply concerned about certifying a class of this breadth. Only because plaintiffs have vigorously asserted the existence of a conspiracy or concerted scheme in this case, and because these allegations tie this class together, has the court provisionally certified a "global" class and allowed plaintiffs the opportunity to establish the basis for the conspiracy and/or concerted scheme allegations. The court is fully aware that civil conspiracy and/or concerted scheme is often difficult, if not impossible, to establish at the pleading stage.

Up to this time, discovery in this litigation has been limited to class certification issues and monitored by the previously appointed Special Master, Gerald Cohn. Because the conspiracy and concerted scheme allegations are the "glue" holding this global class together, logically the next stage of discovery must focus on plaintiffs establishing the basis for these allegations. The court hereby orders Special Master Cohn to closely monitor the discovery on

this issue in whatever manner he deems appropriate. The Special Master shall report back to the court, at such times as he deems proper, as to whether in their discovery plaintiffs are merely engaging in a "fishing expedition" or making a legitimate effort to identify and establish a conspiracy or concerted scheme. Should the Special Master report to the court plaintiffs are engaging in a fishing expedition, and that at the time plaintiffs' pleadings were submitted it was not reasonable to allege such a conspiracy and/or concerted scheme, the court will then consider ordering plaintiffs and/or their counsel to pay defendants' attorneys fees, costs and expenses incurred in this discovery, pursuant to Rule 11 of the Federal Rules of Civil Procedure.

If plaintiffs and their counsel are not willing to be subjected to the potential of Rule 11 sanctions on this issue, their alternative is to dismiss the conspiracy and concerted scheme allegations within 21 days of the date of this Order. Should plaintiffs dismiss the conspiracy and concerted scheme allegations, the court will take under submission the extent to which it should revise this Class Certification Order. If plaintiffs go forward with the conspiracy and concerted scheme claims, they shall present to the Special Master a written outline of their proposed discovery pertaining to the conspiracy and concerted scheme claims within 21 days of the date of this Order. Plaintiffs should also provide a copy of this outline to defendants. All future discovery in this case, by any party, may be taken pursuant only to orders made by the Special Master or the Court.

## IV. MOTIONS FOR SANCTIONS

Defendant Peat Marwick moves to strike plaintiffs' class action allegations against it, and for sanctions under Rule 11. Plaintiffs oppose Peat Marwick's motion as well as cross-move for sanctions.

■ Peat Marwick claims that because plaintiffs made false allegations against it in order to support their separate purchase of securities claim, plaintiffs should be disqualified to serve as class representatives against it, and should be sanctioned under

Rule 11. In the pending motions to dismiss and for summary judgment, the court dismissed Peat, Marwick from this lawsuit, thus mooting the necessity for ruling on Peat Marwick's motion to strike plaintiffs' class allegations against it. In addition, the Court denies Peat Marwick's motion for sanctions. Even if Peat Marwick were correct in asserting that plaintiffs performed an inadequate factual investigation regarding certain allegations, Rule 11 sanctions would be improper because no showing can be made that plaintiffs' "pleading, motion or other paper" itself was frivolous or not well-grounded in fact or law. *See, Golden Eagle Distributing Corporation v. Burroughs Corporation*, 801 F.2d 1531 (9th Cir. Oct. 9, 1986). While this court granted Peat Marwick's motion for partial summary judgment on plaintiffs' separate purchase claim, plaintiffs did establish a cognizable basis for their separate purchase claim against Peat Marwick. Since plaintiffs' pleading against Peat Marwick was not frivolous, the court finds no Rule 11 violations.

Finally, the court denies plaintiffs' cross-motion for sanctions. Contrary to plaintiffs' arguments, Peat Marwick's motion for sanctions was not frivolous, and thus Peat Marwick and its counsel are not subject to Rule 11 sanctions.

## V. SUMMARY

For all of the reasons detailed above, and good cause appearing, the court hereby orders that:

1. Defendants' motion for partial summary judgment on the promissory note issue is GRANTED. Plaintiffs' payments on the promissory notes did not constitute separate investment decisions; and

2. Defendants' motion to dismiss the RICO claim is GRANTED; and

3. Defendants' motion to dismiss the claim under Section 17(a) of the Securities Act of 1933 is GRANTED; and

4. Defendants' motion to dismiss the claims advanced by plaintiffs Roberts, Delk, and Bell under Section 12 of the 1933 Act is GRANTED; and

5. Plaintiff Gauss' claim under Section 12 may go forward against defendants Heim, Hilpert, Savery, American Energy Resources and Dillon '82; his Section 12 claims against the remaining defendants are DISMISSED; and

6. Plaintiffs' claims of primary liability under Section 10(b) are DISMISSED against defendants Houston Harbaugh, Friedman and Shaftan, Schumacher and Hickey, Frederick R. Schumacher, Ltd., Todd Michael Doscher, The Doscher Group, Inc., CLD Group, Inc., Pyles, Krause and Peat, Marwick; plaintiffs' claims against defendants Heim, Savery, Coppage, Basile, Rogen, Hilpert, Bogdan, Cunningham, Lewin Energy, Kuuskraa, Technology Catalysts, DiCicco, Fox & Co., Somers and Altenbach, Robert Altenbach, Baskin and Sears, and the Petrotec Entities may go forward; and

7. Plaintiffs' claims of aiding and abetting under Section 10(b) are DISMISSED against defendants Peat, Marwick, Fox & Co., the CLD Group, Inc., Taylor, Baskin and Sears, Friedman and Shaftan, Schumacher and Hickey, and Frederick Schumacher, Ltd.; plaintiffs' aiding and abetting claims may go forward against defendants Conklin, LaGuardia, McCullough, Puhar, Fiechter, Lewin & Associates, Somers and Altenbach, Robert Altenbach and Tex-Oil; and

8. Plaintiffs' claims of conspiracy to violate Section 10(b) are DISMISSED with prejudice against defendants Schumacher & Hickey, Frederick Schumacher, Ltd., Houston Harbaugh, Peat, Marwick, the CLD Group, Doscher, The Doscher Group, Inc., Case Engineering, Taylor, and Friedman & Shaftman. Plaintiffs' conspiracy claims are DISMISSED without prejudice against defendants Baskin & Sears, Lewin & Associates, Lewin Energy, DiCicco, Kuuskraa, Technology Catalysts, Fox & Co., TexOil, Robert Altenbach and Somers and Altenbach. Plaintiffs' conspiracy claims may go forward against defendants Heim, Hilpert, Savery, Conklin, Basile, Coppage, Rogen, Bogdan, Cunningham, LaGuardia, McCullough, Pyles, Puhar, Fiechter,

Krause, the Manhattan, Denver and Wichita partnerships, and the Petrotec Entities.

9. Plaintiffs' claims under Section 20(a) of the 1934 Act are DISMISSED against defendants Krause, Taylor, Rogen, Hilpert, Conklin, Pyles, and the Petrotec Entities; the claims against Heim, Savery, Basile, Coppage, Cunningham, Bogdan, McCullough, and La Guardia may go forward; and

10. The ruling on claims under Section 15 of the 1933 Act is the same as the ruling on the Section 20 claims except that the claim against defendant Basile is also DISMISSED; and

11. All pendent state claims are DISMISSED against defendants Taylor, the CLD Group, the Doscher Group, Todd Doscher, Case Engineering, Schumacher and Hickey, Frederick Schumacher, Ltd., Houston Harbaugh, Friedman and Shaftan, and Peat, Marwick; and

12. The professional malpractice claim against Lewin & Associates is DISMISSED; and

13. The claims against defendant Pyles under Sections 22504 and 25504.1 of the California Corporations Code are DISMISSED; and

14. The claim against defendant Rogen under Section 25502 of the California Corporations Code is DISMISSED; and

15. The claim against Baskin and Sears under Section 25506.1 of the California Corporations Code is DISMISSED; and

16. The claim against defendant Pyles for negligent misrepresentation is DISMISSED; and

17. Defendants' motions to dismiss the common law conspiracy claims and fraud and deceit claims are DENIED; plaintiffs may go forward with the common law conspiracy claims against the defendants whom they've stated cognizable conspiracy claims under Section 10(b); and

18. Plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3) is GRANTED, as described above; and

19. Defendant Peat Marwick's motion and plaintiffs' cross-motion for Rule 11 sanctions are DENIED.

IT IS SO ORDERED.